**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STANLEY BLACK & DECKER, INC. and THE BLACK & DECKER CORPORATION, | Case No.: 1:20-cv-06808 |
| Plaintiffs, | Judge Robert M. Dow, Jr. |
| v. | Magistrate Judge Susan E. Cox |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**DEFAULT JUDGMENT ORDER**

This action having been commenced by STANLEY BLACK & DECKER, INC. and THE BLACK & DECKER CORPORATION ("SBD" or "Plaintiffs") against the Defendants identified in the attached First Amended Schedule A and using the Defendant Domain Names and Online Marketplace Accounts (collectively, the "Defendant Internet Stores"), and SBD having moved for entry of Default and Default Judgment against the defendants identified in the First Amended Schedule A attached hereto (collectively, the "Defaulting Defendants");

This Court having entered upon a showing by SBD, a temporary restraining order and preliminary injunction against Defaulting Defendants which included a domain name transfer order and asset restraining order;

SBD having properly completed service of process on Defaulting Defendants, the combination of providing notice via electronic publication or e-mail, along with any notice that Defaulting Defendants received from payment processors, being notice reasonably calculated under all circumstances to apprise Defaulting Defendants of the pendency of the action and affording them the opportunity to answer and present their objections; and

None of the Defaulting Defendants having answered the Complaint or appeared in any way, and the time for answering the Complaint having expired;

THIS COURT HEREBY FINDS that it has personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois. "In the context of cases like this one, that means a plaintiff must show that each defendant is actually operating an interactive website that is accessible in Illinois and that each defendant has aimed such site at Illinois by standing ready, willing and able to ship its counterfeit goods to customers in Illinois in particular (or otherwise has some sufficient voluntary contacts with the state)." *Am. Bridal & Prom Indus. Ass'n v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F.Supp.3d 924, 934 (N.D. Ill. 2016). In this case, Plaintiffs have presented screenshot evidence that each Defendant Internet Store is reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can and do purchase products using counterfeit versions of Plaintiffs' Trademarks. See Docket No. 11 which includes screenshot evidence confirming that each Defendant Internet Store does stand ready, willing and able to ship its counterfeit goods to customers in Illinois bearing infringing and/or counterfeit versions of the U.S. Trademark Registration Nos. 1,734,403; 1,734,404 (the "DEWALT Trademarks") as well as the U.S. Trademark Registration No. 3,064,666 for the DEWALT yellow and black color scheme for use in connection with battery packs (the "DEWALT Trade Dress").

THIS COURT FURTHER FINDS that Defaulting Defendants are liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114) and false designation of origin (15 U.S.C. § 1125(a)).

IT IS HEREBY ORDERED that SBD's Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendants are deemed in default and that this Default Judgment is entered against Defaulting Defendants.

IT IS FURTHER ORDERED that:

1. Defaulting Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

    a. using the DEWALT Trademarks and Trade Dress or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine SBD Product or not authorized by SBD to be sold in connection with the DEWALT Trademarks and Trade Dress;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine SBD Product or any other product produced by SBD, that is not SBD's or not produced under the authorization, control or supervision of SBD and approved by SBD for sale under the DEWALT Trademarks and Trade Dress;

    c. committing any acts calculated to cause consumers to believe that Defaulting Defendants' products are those sold under the authorization, control or supervision of SBD, or are sponsored by, approved by, or otherwise connected with SBD;

    d. further infringing the DEWALT Trademarks and Trade Dress and damaging SBD's goodwill;

    e. otherwise competing unfairly with SBD in any manner;

    f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or

inventory not manufactured by or for SBD, nor authorized by SBD to be sold or offered for sale, and which bear any of the DEWALT Trademarks and Trade Dress or any reproductions, counterfeit copies or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defaulting Defendants could continue to sell Counterfeit/Infringing Products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defaulting Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the DEWALT Trademarks and Trade Dress or any reproductions, counterfeit copies or colorable imitations thereof that is not a genuine SBD Product or not authorized by SBD to be sold in connection with the DEWALT Trademarks and Trade Dress.

2. The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order, shall, at SBD's choosing:

a. permanently transfer the Defendant Domain Names to SBD's control, including unlocking and changing the registrar of record for the Defendant Domain Names to a registrar of SBD's selection, and the domain name registrars shall take any steps necessary to transfer the Defendant Domain Names to a registrar of SBD's selection; or

   b. cancel the registrations for the Defendant Domain Names and make them inactive.

3. Those in privity with Defaulting Defendants and with actual notice of this Order, including any online marketplaces such as social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall within three (3) business days of receipt of this Order:

  a. disable and cease providing services for any accounts through which Defaulting Defendants engage in the sale of counterfeit and infringing goods using the DEWALT Trademarks and Trade Dress, including any accounts associated with the Defaulting Defendants listed on First Amended Schedule A attached hereto;

  b. disable and cease displaying any advertisements used by or associated with Defaulting Defendants in connection with the sale of counterfeit and infringing goods using the DEWALT Trademarks and Trade Dress; and

  c. take all steps necessary to prevent links to the Defendant Internet Stores identified on First Amended Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

4. Pursuant to 15 U.S.C. § 1117(c)(2), SBD is awarded statutory damages from each of the Defaulting Defendants in the amount of five hundred thousand dollars ($500,000) for willful use of counterfeit DEWALT Trademarks and Trade Dress on products sold through at least the Defendant Internet Stores.

5. Western Union shall, within two (2) business days of receipt of this Order, permanently block any Western Union money transfers and funds from being received by the Defaulting Defendants identified on First Amended Schedule A.

5

6. eBay, Inc. ("eBay") and PayPal, Inc. ("PayPal") shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified on First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

7. All monies up to the amount of statutory damages awarded in ¶ 4 currently restrained in Defaulting Defendants' financial accounts, including monies held by eBay and PayPal, are hereby released to SBD as partial payment of the above-identified damages, and eBay and PayPal are ordered to release to SBD the amounts from Defaulting Defendants' eBay and PayPal accounts within ten (10) business days of receipt of this Order.

8. Until SBD has recovered full payment of statutory damages identified in ¶ 4 owed to it by any Defaulting Defendant, SBD shall have the ongoing authority to serve this Order on eBay and PayPal, in the event that any new eBay and PayPal accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, eBay and PayPal shall within two (2) business days:

    a. Locate all accounts and funds connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites, including, but not limited to, any eBay and PayPal accounts;

    b. Restrain and enjoin such accounts or funds that are China or Hong Kong based from transferring or disposing of any money or other of Defaulting Defendants' assets; and

    c. Release all monies restrained in Defaulting Defendants' eBay and PayPal accounts to SBD as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

9. Until SBD has recovered full payment of statutory damages identified in ¶ 4 owed to it by any Defaulting Defendant, to the extent that financial accounts or assets are identified as belongining to a particular Defaulting Defendant, SBD shall submit a turnover motion to the Court explaining the basis for attributing those assets or accounts to a particular Defaulting Defendant subject to the judgment. Once a turnover order has been entered by the Court, SBD shall have the ongoing authority to serve that Order on any banks, savings and loan associations, or other financial institutions (collectively, the "Financial Service Providers"). Upon receipt of that Order, the Financial Service Providers shall within two (2) business days:

   a. Locate all accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites;

   b. Restrain and enjoin such accounts from receiving, transferring or disposing of any money or other of Defaulting Defendants' assets; and

   c. Release all monies up to the amount of statutory damages identified in ¶ 4 restrained in Defaulting Defendants' financial accounts to SBD as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

10. In the event that SBD identifies any additional online marketplace accounts, domain names or financial accounts owned by Defaulting Defendants, SBD may send notice of any supplemental proceeding to Defaulting Defendants by e-mail at the email addresses identified in Exhibit 2 to the Declaration of Adan Ayala and any e-mail addresses provided for Defaulting Defendants by third parties.

11. The bond posted by Plaintiffs in the amount of $10,000.00 is hereby ordered released by the Clerk.

This is a Default Judgment.

Dated: January 21, 2021

_____
United States District Court Judge

**FIRST AMENDED SCHEDULE A**

| No. | Defendants |
|---|---|
| 1 | |
| 2 | |
| 3 | 2019nana |
| 4 | batteryexpert2016 |
| 5 | batteryengineer |
| 6 | enegitechus |
| 7 | unionhonestyindustrialcompany |
| 8 | dooobest |
| 9 | |
| 10 | |
| 11 | topbatt_2016 |
| 12 | |
| 13 | |
| 14 | eztrade2world |
| 15 | batteryspecialist |
| 16 | eagglewtek |
| 17 | expertpow |
| 18 | mudatech |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | tbatterypal |
| 30 | |
| 31 | JINXIANG LEI |
| 32 | |
| 33 | |
| 34 | |
| 35 | outletmalls_92 |
| 36 | batterymall2018 |
| 37 | |

| | |
|---|---|
| 38 | |
| 39 | |
| 40 | dosctt |
| 41 | |
| 42 | |
| 43 | |
| 44 | nice-experience |
| 45 | |
| 46 | hthf8189 |
| 47 | mopow |
| 48 | antrobutus |
| 49 | |
| 50 | hffytek |
| 51 | andiooes |
| 52 | |
| 53 | ipowerbest |
| 54 | |
| 55 | powerbattery888 |
| 56 | powerstation1 |
| 57 | |
| 58 | powermore |
| 59 | |
| 60 | gadgetselectron |
| 61 | |
| 62 | furiousautosite |
| 63 | henzens-2017 |
| 64 | |
| 65 | |
| 66 | |
| 67 | |
| 68 | |
| 69 | http://www.vanobattery.com |
| 70 | |
| 71 | |
| 72 | https://www.ebbattery.com |
| 73 | https://www.capacitybatteries.com/ |
| 74 | |
| 75 | |
| 76 | |
| 77 | www.cacedsp.com |

Case: 1:20-cv-06808 Document #: 40 Filed: 01/21/21 Page 11 of 11 PageID #:3184